## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 28 2019, 11:14 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| George Harrison, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 28, 2019 <br><br> Court of Appeals Case No. 18A-CR-3148 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable John F. Surbeck, Jr., Judge <br><br> Trial Court Cause No. 02D04-1607-F3-45 |

**Altice, Judge.**

## Case Summary

George Harrison appeals his conviction for aggravated battery, a Level 3 felony, on the grounds that the State provided insufficient evidence to rebut his claim of self-defense.

We affirm

## Facts & Procedural History

On July 16, 2016, Cody Robbins, a national guardsman who had grown up in the house behind Harrison's, was back in his parents' home celebrating his nephew's birthday. At the party, Cody's sister Lindsey mentioned that days earlier Cody's one-year-old daughter had been playing near Harrison's fence when he became enraged and yelled "get the white trash baby off [my] fence." *Transcript Vol. 2* at 131. Upon hearing this, Cody decided to talk with Harrison about the incident. Not wanting to intimidate Harrison by arriving in fatigues, Cody changed out of his guardsman uniform before riding his motorcycle around the block to Harrison's house.

Harrison, a man in his late fifties who had ongoing health issues, was in his living room when his wife Carliss answered the door. Cody asked to speak with Harrison, who came to the door holding a kitchen knife. Cody maintained a calm demeanor and asked Harrison why he had called his daughter white trash. Harrison became agitated, shouting about a boy who used to live behind his house destroying his things and entering the woods on

his property. Cody informed Harrison that he was in fact that little boy and that he had never destroyed any of the Harrison's belongings. Harrison continued shouting at Cody, accusing him of damaging the fence and throwing things into the yard when he was a boy. Cody again asked why Harrison would call his daughter white trash, but Harrison ignored him. The argument escalated when Harrison shoved Cody, who then shoved Harrison back. Witnessing the altercation, Carliss informed the men that she was calling the police.

[5]     Cody walked back to his motorcycle that was parked in front of Harrison's house. While sitting on his motorcycle waiting for the police, Cody saw Lindsey walking through a neighbor's yard toward him. Lindsey had heard the shouting from her parents' house and came to see if everything was alright. Harrison saw Lindsey and approached her while reaching into his pocket. Cody got off his motorcycle and began yelling over the bike's engine noise, telling Harrison not to touch his sister. Visibly upset and angry, Harrison turned and walked into the street toward Cody. Standing face to face and within inches of each other, Cody warned Harrison to step back. In response, Harrison produced a knife from his pocket and stabbed Cody once in the chest. Cody shoved Harrison and then fell to his knees. After seeing blood pour from his chest, Cody ran down the street, pursued by the knife wielding Harrison. Carliss and some neighbors managed to calm Harrison down and get him back

inside his house. Cody continued down the block and informed a neighbor that Harrison had stabbed him. Cody then collapsed on a patch of grass near the road. Lindsey, who ran back to her parents' home after witnessing the stabbing, arrived in a car with Cody's wife and found Cody, who was pale, bloodied, and unresponsive. The women drove down the street and encountered a fire truck, which they hailed.

[6] After the police had cordoned off Harrison's house, Clariss approached the home of Bruce and Selener Walker and asked if she could use their bathroom. Selener noticed that Clariss was carrying a rolled up towel with the butt of a knife visible in the center. When Clariss returned from the Walkers's bathroom, the towel was draped around her shoulder and the knife was gone. The Walkers informed the police, but the knife was never found. When police spoke to Harrison he admitted without prompting that he "stabbed the motherf*cker." *Transcript. Vol. 1* at 226, 233.

[7] Cody's left lung and heart were punctured, requiring open heart and lung surgery. He was forced to take a medical retirement from the National Guard. At the time of the trial, he had only 65% lung capacity and suffered heart flutters.

[8] Harrison was charged with Count I, aggravated battery, a Level 3 felony, Count II, battery, a Level 5 felony, and Count III, criminal recklessness, a Level 6 felony. After a jury trial, Harrison was found guilty on all counts. The trial

court entered conviction on Count I and sentenced Harrison to the Indiana Department of Correction for nine years, with four years suspended to probation.

## Discussion & Decision

On appeal, Harrison argues that there was insufficient evidence to conclude that he was guilty beyond a reasonable doubt. Specifically, Harrison asserts the State failed to negate his claim of self-defense.

In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006), *trans. denied*. We consider only the evidence most favorable to the judgment together with all reasonable and logical inferences to be drawn therefrom. *Id*. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Montgomery v. State*, 22 N.E.3d 768, 779 (Ind. Ct. App. 2014), *trans. denied*. "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

"A valid claim of self-defense is a legal justification for an otherwise criminal act." *Henson v. State*, 786 N.E.2d 274, 277 (2003). In order for a defendant to

prevail on a claim of self-defense, he must show that (1) he acted without fault, (2) was somewhere he had a right to be, and (3) was in reasonable fear or apprehension of bodily harm. *Id.* A self-defense claim may be rebutted where it is shown that the defendant was the initial aggressor. *Kimbrough v. State*, 911 N.E.2d 621, 636 (Ind. Ct. App. 2009). "If a defendant is convicted despite his or her claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014), *trans. denied*.

[12] To support his argument, Harrison relies exclusively on his own self-serving testimony at trial. Harrison claimed that Cody poked him in the head multiple times during their interaction at his front door. He further testified that Cody returned from waiting on his motorcycle and walked back onto his property. Here, according to Harrison, Cody then charged and swung at him three times, making contact once before proceeding to choke him. Harrison stated that before he stabbed Cody, he saw Cody draw an 18-inch knife, making him feel threatened. Thus, Harrison argues that his actions satisfied the standard needed to prevail on a claim of self-defense, and that there was insufficient evidence to rebut his claim. We disagree.

[13] Harrison's testimony was contradicted by that of the victim, the victim's sister, and neighbors who witnessed portions of the incident. The jury reached a verdict by weighing the conflicting evidence and assessing the credibility of the

witnesses. The jury was not obligated to give credence to Harrison's testimony. As such, we will not accept Harrison's invitation to reweigh the evidence here.

[14] Judgment affirmed.


Kirsch, J. and Vaidik, C.J., concur.